IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL CASE NOS. |
| v. | 1:11-CR-00009-ODE-RGV |
| | 1:11-CR-00060-ODE-RGV |
| JOSE REYES | |

<u>ORDER</u>

These criminal cases are currently before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Russell G. Vineyard [Cr. No. 9: Doc. 140; Cr. No. 60: Doc. 67][1] filed on August 29, 2011. In the R&R, Magistrate Judge Vineyard recommended denying Defendant Jose Reyes's motion to suppress evidence and statements [Cr. No. 9: Doc. 87; Cr. No. 60: Doc. 26]. On September 7, 2011, Defendant Reyes timely filed his objections to the R&R [Cr. No. 9: Doc. 143; Cr. No. 60: Doc. 71]. For the following reasons, Defendant Reyes's objections [Cr. No. 9: Doc. 143; Cr. No. 60: Doc. 71] are OVERRULED, Judge Vineyard's R&R [Cr. No. 9: Doc. 140; Cr. No. 60: Doc. 67] is ADOPTED IN ITS ENTIRETY,

---

[1]Defendant Reyes has been indicted in two criminal cases and filed identical motions to suppress in each case. Magistrate Judge Vineyard addressed the motions for both cases in one R&R, which was filed in each case. Throughout this order, Judge Vineyard's R&R [Cr. No. 9: Doc. 140; Cr. No. 60: Doc. 67] will be cited as "[R&R]". Similarly, Defendant Reyes's motion to suppress evidence and statements [Cr. No. 9: Doc. 87; Cr. No. 60: Doc. 26] will be cited as "[Motion to Suppress]", and his objections to the R&R [Cr. No. 9: Doc. 143; Cr. No. 60: Doc. 71] will be cited as "[Objections]". The transcript of the evidentiary hearing conducted by the Magistrate on May 9, 2011 [Cr. No. 9: Doc. 121; Cr. No. 60: Doc. 57] will be cited as "[Tr.]".

and Defendant Reyes's motions [Cr. No. 9: Docs. 86, 87, 88; Cr. No. 60: Doc. 25, 26, 27] are DENIED.[2]

I. Factual Background and Procedural History

Defendant Reyes has not objected to Judge Vineyard's findings of fact as stated in the R&R. The Magistrate's version of the facts is not clearly erroneous and therefore is adopted by this Order. Because the factual background is laid out in detail in the R&R, it is not necessary to recite all of the facts again

---

[2]Defendant Reyes also filed in each case preliminary motions to suppress intercepted communications [Cr. No. 9, Doc. 25; Cr. No. 60, Doc. 86], but failed to perfect those motions within the time allotted by the Magistrate Judge after a pretrial conference and subsequent evidentiary hearing [R&R at 3, n. 1]. Judge Vineyard recommended that Reyes's motions to suppress intercepted communications be deemed abandoned and denied [Id.]. In his objections to the R&R, Reyes does not specifically address the motion to suppress intercepted communications or refute the Magistrate Judge's conclusion that Reyes failed to perfect that motion. However, in Reyes's conclusion to his objections, he requests that the Court reject the R&R and "grant the Motion to Suppress. (Cr. No. 9), [Docs. 86, 87, 88]; (Cr. No. 60) [Docs. 25, 26, 27]" [Cr. No. 9, Doc. 143 at 9-10; Cr. No. 60, Doc. 71 at 9-10]. This generic request to grant the unperfected motion is insufficient to serve as an objection the Magistrate Judge's recommendation that the motion be denied. Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988) ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court.") Therefore, Reyes's motion to suppress intercepted communications [Cr. No. 9, Doc. 25; Cr. No. 60, Doc. 86] is DENIED.

Defendant Reyes also initially filed a motion to suppress DNA evidence [Cr. No. 9, Doc. 27; Cr. No. 60, Doc. 88], but at the evidentiary hearing it was determined that the government did not intend to offer any DNA evidence against Reyes. Judge Vineyard denied the motion as moot on May 9, 2011 [Cr. No. 9: Doc. 110; Cr. No. 60: Doc. 50-1]. It is unclear why Defendant Reyes again requests this motion to be granted in his objections to the R&R, but the Court need not further address this motion as it has already been denied as moot.

2

here. Relevant facts will be discussed below in the analysis of Defendant's objections and the review of the R&R.

II. Discussion

A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which Defendant has timely and specifically objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 673-74 (1980). However, for a party's objections to warrant de novo review, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The Eleventh Circuit has noted that "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) (Story, J.) ("[I]ssues upon which no specific objections are raised do not so require de novo review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

3

B.   Defendant Reyes's Motion to Suppress Evidence and Statements

In Defendant Reyes's motion to suppress [Cr. No. 9, Doc. 26; Cr. No. 60, Doc. 87], he moves the Court to suppress evidence and statements from the stop and arrest of Mr. Reyes on July 3, 2009, the stop and arrest of Mr. Reyes on July 10, 2009, and the search of the vehicle he was driving ("the Mountaineer") on July 14, 2009.[3] After an evidentiary hearing and post-trial briefing by both Mr. Reyes and the government, Magistrate Judge Vineyard recommended that Mr. Reyes's motion to suppress be denied as to all evidence and statements at issue. In his objections, Mr. Reyes specifically challenges Judge Vineyard's conclusions as to the validity of the July 3, 2009, stop and subsequent arrest of Mr. Reyes and as to the validity of the July 14, 2009 vehicle search of Mr. Reyes's Mountaineer. First, with regard to the stop of the vehicle on July 3, 2009, Mr. Reyes contends that the R&R was erroneous because the stop was pretextual and therefore in violation of the Fourth Amendment. Second, Mr. Reyes contends that even if the stop was initially justified, the Officer who stopped the vehicle exceeded the permissible scope of the stop through his continued questioning of and repeated demands for identification from Mr. Reyes. Finally, Mr. Reyes argues that the warrantless July 14, 2009 search of the Mountaineer that revealed the gun was an illegal investigatory search rather than an

---

[3]Although the original motion to suppress did not include all three of these incidents, the motion was deemed to have been amended at the evidentiary hearing conducted by Judge Vineyard on May 9, 2011 to include a request to suppress evidence and statements from each of these incidents [Tr. at 10].

4

inventory search that falls within the inventory exception to the warrant requirement. The Court will evaluate each of these objections in turn.

1. <u>The July 3, 2009 stop was based on probable cause.</u>

On July 3, 2009, Defendant Jose Reyes was driving a vehicle that was being monitored by the Gwinnett County Police Department (GCPD). Sergeant Restrepo of the GCPD called Officer Sipple, also of GCPD, and asked him to stop the car if he could find probable cause to do so [Tr. at 11]. After observing the vehicle's tinted windows in a parking lot, Officer Sipple stopped the vehicle pursuant to OCGA § 40-8-73.1, which regulates the permissible level of car window tints [Tr. at 12]. After stopping the vehicle, Officer Sipple requested identification from both the driver (Reyes) and the passenger (co-defendant Gabriel Payamps). It appears that Officer Sipple did not actually test the windows for the tint after stopping the vehicle.

Defendant Reyes argues that Officer Sipple's stop of Reyes's vehicle was "an unfounded pre-textual stop" in violation of <u>Whren v. United States</u>, 517 U.S. 806 (1996) because the officer never intended to check the window tint but instead stopped the car because he was instructed to do so by his commanding officer [Objections at 3]. Reyes further argues that the July 3, 2009, stop "was clearly an investigatory stop, not a stop based on probable cause" such that <u>Whren</u> does not apply. <u>Id.</u> Reyes contends that because Officer Sipple stated he could stop *any* car that had tinted windows, he did not articulate probable cause that Reyes's car windows violated the statute.

Judge Vineyard concluded in his R&R that Officer Sipple's subjective intent and reasons for stopping the vehicle are irrelevant because he had probable cause to stop it under the window tint statute [R&R at 17]. In his objections to the R&R, Reyes repeats his arguments that the stop was pretextual despite the rule laid out in <u>Whren</u> because Officer Sipple "created the pretext that the windows were too tinted" [Objections at 3]. It appears that the Defendant is arguing in his objections that the Officer lacked probable cause to stop Reyes based on the fact that the Officer "gave his own opinion that he did not know whether the stop of Reyes for tinted windows was legitimate" [Objections at 3, citing to Tr. at 24].

Once it is established that probable cause objectively existed to stop the vehicle, for any valid reason, then it is irrelevant why the officer actually stopped it. <u>United States v. Arango</u>, 396 F. App'x 631, 632-33 (11th Cir. 2010) (per curiam) ("Where objectively reasonable conditions permit a stop, the officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment.") (internal quotation marks and citation omitted); <u>Miller v. Harget</u>, 458 F.3d 1251, 1260 (11th Cir. 2006) ("It is well-settled that an officer's subjective motivations do not affect whether probable cause existed") (citations omitted). Thus, as long as the Officer had probable cause to stop the car based on its window tint, it does not matter whether he actually intended to or ultimately did test the vehicle's window tint.

Here, Officer Sipple observed, prior to stopping the vehicle, that it had "dark tinted windows" [Tr. at 11]. He further

6

testified that he could not tell whether anyone was inside the vehicle while it was stopped in a parking lot [Tr. at 20]. Based on a de novo review of the record, the Court finds that the July 3, 2009, stop was based on probable cause. See United States v. Garcia, 284 F. App'x 791, 793 (11th Cir. 2008) (finding that the district court did not err in concluding an officer had probable cause to stop a vehicle for a window tint violation where the officer could not see through the window into the vehicle and despite the fact that the officer failed to test the window tint after stopping the vehicle).

Defendant Reyes argues in his objections that Officer Sipple failed to justify his statement that the windows were too dark beyond his statement that "[a]ny time there is a window tint placed on there, the vehicle can be stopped and be checked with the tint meter that I was assigned" [Doc. 121 at 12].[4] However, the Eleventh Circuit has distinguished the standard for probable cause from the standard for a violation of a window tint statute. The Court in United States v. Weaver explained that "The statute's prohibition of windows with light transmittance below [a certain] percent articulates when a vehicle violates Florida law. But probable cause requires less support than that necessary for a

---

[4]Defendant Reyes also takes issue in his objections to Office Sipple's concession during the hearing that "he did not know whether the stop of Reyes for tinted windows was legitimate" [Objections at 3]. However, the objections take this statement out of context. Officer Sipple was answering a question about whether he ultimately tested the tint on the windows, and after stating that he did not, he agreed that he could not confirm whether the original purpose of the stop was a legitimate one because he abandoned the window tint violation once the false name issue arose [Tr. at 24].

7

conviction." Weaver, 145 F. App'x 639, 641 (11th Cir. 2005). Although Officer Sipple did not testify as to what percentage of light he believed Defendant's windows would transmit, he did state that he observed the dark windows and believed the windows may have been in violation of the tint statute [Tr. at 12]. Moreover, the government presented a photograph of the rear window of the Mountaineer at the evidentiary hearing, and it appears that the window would not have permitted the officer to see inside the vehicle [Gov't Ex. 1]. Officer Sipple's July 3, 2009 stop of the Mountaineer was therefore objectively based on probable cause. See Garcia, 284 F. App'x at 793.

   2.  The July 3, 2009 stop did not exceed its constitutional scope.

Reyes argues that the scope of Officer Sipple's July 3, 2009, stop exceeded the limits allowed by Terry v. Ohio, 392 U.S. 1 (1968), because "the Defendant was not detained only as long as necessary to investigate probable cause of criminal activity" [Objections at 6]. Judge Vineyard concluded that Officer Sipple did not unreasonably extend the traffic stop; he was justified in prolonging the stop to continue asking questions of Reyes when the address on his license and the address in the database did not match up [R&R at 20].

After reviewing the R&R, this Court agrees with the Magistrate that Officer Sipple was justified in asking Defendant Reyes, the driver of the vehicle, for identification as part of a valid stop of the vehicle. INS v. Delgado, 466 U.S. 210, 216 (1984) (citing Florida v. Royer, 460 U.S. 491 (1983)). In his objections to the R&R, Reyes argues that the officer unreasonable

8

prolonged the stop beyond the scope permitted by Terry v. Ohio by questioning Reyes about his address and the address listed on his identification and by asking for additional identification when the address listed on the license did not match the address in the database [Objections at 3-7]. Reyes argues this continued questioning was a pretext and that "Reyes was detained just as long as it took to manufacture evidence of criminal activity, i.e., false name" [Id. at 7]. Magistrate Judge Vineyard found in the R&R that it was reasonable for Officer Sipple to ask additional questions "when Reyes insisted that his address was the address on the license and not the more recent address in the database" [R&R at 20]. The R&R contains an extensive discussion of case law in this circuit permitting a law enforcement officer to question a driver about his identity and extend a traffic stop to resolve questions about a driver's license or vehicle registration. Defendant Reyes's objections to the R&R largely repeat arguments he made in the brief submitted to Judge Vineyard. He also argues that the continued questioning was unconstitutional because it was "not reasonably related to the circumstances that the officer sued [sic] to justify the stop or to dispelling any reasonable suspicion developed during the stop" [Doc. 143 at 5]. However, the only case Defendant Reyes cites for the proposition that "[a]n officer's questions are acceptable only as long as the questions concern resolving suspicions upon which the stop is based" [Doc. 143 at 6] does not actually contain such a holding. Instead, the case cited, United States v. Purcell, 236 F.3d 1274 (11th Cir. 2001), held that "only unrelated questions which *unreasonably prolong* the detention are unlawful; detention, not

questioning, is the evil at which Terry's [prohibition] is aimed. Questions which do not extend the duration of the initial seizure do not exceed the scope of an otherwise constitutional traffic stop." Id. at 1280 (internal citations and quotation marks omitted) (emphasis added). Here, the Officer's continued questioning and request for additional identification did not take the stop outside constitutional limits. It does not appear from Officer Sipple's testimony or Reyes's arguments that the stop lasted an unreasonable amount of time; indeed, Reyes was arrested for providing a false name before Officer Sipple had otherwise completed the initial purpose of the stop. Moreover, this Court agrees with the analysis presented in the R&R finding that an "officer may also prolong the detention to investigate the driver's license and the vehicle registration and may do so by requesting a computer check." Purcell, 236 F.3d at 1278 (internal citations omitted). Therefore, the Court concludes that the stop of the vehicle and the detention of Reyes on July 3, 2009, were reasonable, and having reviewed de novo the portion of the R&R addressing the stop and detention, ADOPTS those sections of the R&R.

3. The second inventory search of the Mountaineer falls within the inventory search exception to the Fourth Amendment's warrant requirement.

Defendant Reyes's motion to suppress evidence and statements also challenged the July 14, 2009 inventory search of his car by GCPD. After Defendant Reyes was arrested on July 10, 2009, the vehicle he was driving, the Mountaineer, was impounded by GCPD.

10

Prior to the impoundment, a valid[5] inventory search was conducted pursuant to GCPD's protocol and inventory policy [Tr. at 47]. The vehicle was searched again, this time more thoroughly, on July 14, 2009. Sergeant Restrepo of the GCPD testified that the second search was done pursuant to the GCPD's policy for forfeiture proceedings [Tr. at 48-49]. During this second search, a gun was found and seized from the glove compartment area of the vehicle [Tr. at 50].

Mr. Reyes argues that because the car was searched twice, the second search, in which the gun was found, was not an inventory search but rather "an exhaustive investigative search" that should have been done only after obtaining a search warrant, which he argues the GCPD had ample time to do [Objections at 8]. The government argues that the second search was "an administrative step in the vehicle's forfeiture process. . . . [which] called for a complete inventory into all containers, open or closed," and was done pursuant to GCPD's standardized procedures [Cr. No. 60, Doc. 59 at 6; Cr. No. 9, Doc. 127 at 6].

Judge Vineyard concluded in the R&R that the evidence obtained in the July 14, 2009 search was lawfully seized because the vehicle was lawfully impounded and the search was done pursuant to a comprehensive impound and inventory policy [R&R at 25]. The R&R found that the motivations of the GCPD in conducting

---

[5]Defendant Reyes does not contend that the initial impoundment and inventory search of the vehicle was illegal [Objections at 8], and the Court does not find otherwise. Thus, the objections to the R&R, and the analysis in this Order, are limited to the second search of the Mountaineer, which turned up the handgun Mr. Reyes seeks to suppress.

11

an otherwise valid inventory search were irrelevant "'so long as [the inventory] was *one* of the police motives'" [R&R at 24 (quoting United States v. Orozco, 715 F.2d 158, 161 (5th Cir. 1983) (per curiam)].

In his objections, Reyes contends that the analysis in the R&R is applicable only to the first inventory search and that the second search falls outside the scope of an inventory search and therefore required a warrant [Objections at 8]. Mr. Reyes does not specifically argue that the second search violated GCPD's policy but rather that the GCPD officers should have gotten a warrant before conducting the search. Thus, it appears that Mr. Reyes is challenging the validity of a second inventory search per se. His argument appears to be that the second search cannot be considered an inventory search because it was done four days after the car was impounded, or because an initial inventory search had already been conducted, vitiating the need for a second one and turning this into a simple investigatory search.

A warrantless inventory search is reasonable when it is conducted in good faith and pursuant to reasonable police inventory procedures. Colorado v. Bertine, 479 U.S. 367, 374 (1987). The GCPD's operating manual contains the protocol for impounded vehicles. Prior to impound, the passenger compartment, trunk, glove box, and all packages and containers therein are supposed to be inventoried [Gov't Ex. 2 at 2]. Defendant does not challenge the initial impoundment and first inventory search of the vehicle, which occurred on July 10, 2009 [Objections at 8].

GCPD policy on Seizure and Forfeiture of Assets, Section 405, applies to the seizure and forfeiture of assets that have been

12

used or were intended to be used in violation of the Georgia Controlled Substances Act [Gov't Ex. 3 at 1]. The GCPD policy also appears to allow seizure of vehicles used in the commission of a burglary or armed robbery [Gov't Ex. 3 at 1]. When a vehicle is subject to forfeiture, the manual calls for a comprehensive search of all open and closed containers to prepare the vehicle for forfeiture to and sale by the government [Id. at 4]. GCPD officers conducted a thorough forfeiture search of the vehicle on July 14, 2009, four days after the initial impoundment [Tr. at 48]. During this search, Sergeant Restrepo located a handgun behind the glove compartment of the vehicle [Tr. at 50-51]. Defendant Reyes has challenged the validity of this second inventory search, arguing that due to the absence of exigent circumstances, GCPD was required to obtain a warrant prior to searching the vehicle [Objections at 9].

The Court's task in evaluating this search is simple because the Supreme Court has decided a case on analogous facts. In Cooper v. California, 386 U.S. 58 (1967), the Supreme Court reviewed the search of a vehicle seized from a defendant arrested on narcotics charges. In Cooper, Defendant's vehicle was seized pursuant to a California statute that required an officer making an arrest for a narcotics violation to seize a vehicle involved in a narcotics violation for such vehicle to be held as evidence until the vehicle is forfeited or released. Id. at 60. After the initial seizure, Mr. Cooper's vehicle was taken into police custody and was searched a week after Mr. Cooper's arrest. Id. at 58. The search resulted in evidence used to convict Mr. Cooper of narcotics charges. Id. at 58. The Court held that the search was

13

reasonable under the Fourth Amendment. Id. at 62. The Court explained that "the reason for and nature of the custody may constitutionally justify the search. . . . [The police] seized [the vehicle] to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search . . . was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." Id. at 61. The Court concluded that the police search of the vehicle prior to its forfeiture was reasonable for their own protection, adding that "[i]t is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.'" Id. at 62 (quoting United States v. Rabinowitz, 339 U.S. 56, 66 (1950)).

The facts in Mr. Reyes's situation are analogous to the facts in Cooper. The Mountaineer was seized as evidence relating to the charges on which he was arrested [Tr. at 48]. In Cooper, the forfeiture search of the defendant's vehicle occurred a week after it was impounded; here, Mr. Reyes's Mountaineer was searched four days later. Although GCPD's policy makes seizure and forfeiture of such assets discretionary rather than mandatory, GCPD officers complied with the reasonable procedures outlined in the GCPD directive manual, and the Court has made clear that "[n]othing . . . prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of criminal activity." Bertine, 479 U.S. at 375. Here, Sergeant Restrepo testified that the forfeiture search was conducted in order to prepare the

14

vehicle for sale subsequent to its forfeiture [Tr. at 48-49]. Furthermore, there is no argument by Mr. Reyes - nor any evidence in the record - that the search exceeded the permissible scope of the forfeiture search procedures in the GCPD manual [Gov't Ex. 3]. Finding no relevant distinction between the facts and holding in Cooper and the situation presented by Mr. Reyes, the Court concludes that GCPD's search of the Mountaineer falls squarely within constitutional bounds as an inventory search.[6] See also South Dakota v. Opperman, 428 U.S. 364, 373 (1976) (noting with approval that in Cooper, "the Court upheld the inventory of a car impounded under the authority of a state forfeiture statute[,] [e]ven though the inventory was conducted in a distinctly criminal setting and carried out a week after the car had been impounded . . . .") (footnote omitted).

The Court finds that the second inventory search, the only one challenged by Defendant Reyes, was conducted pursuant to a reasonable police policy and falls within the inventory search exception to the Fourth Amendment's warrant requirement. Mr.

---

[6]United States v. Khoury, 901 F.2d 948 (11th Cir. 1990), the case relied on by Mr. Reyes to support his argument that GCPD should have obtained a warrant prior to the second inventory search, is easily distinguishable on its facts. There, the challenged seizure was of the defendant's notebook, and the officer had fulfilled the objectives of the inventory search before he realized the notebook had evidentiary value. In other words, the officer had completed the inventory's purpose of determining that the notebook did not pose a danger to police but was of value to the defendant. He then continued to search the notebook and found evidence of criminal activity. Here, GCPD officers were still in the process of completing the forfeiture search when they came across the handgun. Thus, Khoury is inapposite.

15

Reyes's objections to Judge Vineyard's conclusions in the R&R are therefore OVERRULED, and the R&R is ADOPTED.

III. Conclusion

Having reviewed de novo those portions of the R&R to which Defendant objected, Defendant Reyes's objections [Cr. No. 9: Doc. 143; Cr. No. 60: Doc. 71] are OVERRULED, and Judge Vineyard's R&R [Cr. No. 9: Doc. 140; Cr. No. 60: Doc. 67] is ADOPTED IN ITS ENTIRETY. Accordingly, Defendant's motion to suppress evidence and statements [Cr. No. 9: Doc. 87; Cr. No. 60: Doc. 26] is DENIED.

SO ORDERED this 19 day of January, 2012.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

16